NORTH CAROLINA

ALAMANCE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS _____

ANNA MARIE MARTIN,

        Plaintiff,

       v.

CITY OF BURLINGTON,
a Municipal Corporation,
HAROLD T. OWEN, in his official
capacity as the City Manager of
Burlington,
HARDIN WATKINS, in his official
capacity as the City Manager of
Burlington,
THE BURLINGTON POLICE
DEPARTMENT,
JEFFREY SMYTHE, in his individual
and his official capacity as Burlington
Police Chief,
KARLA A. TOPETE, in her
individual and her official capacity
as an Officer in the Burlington Police
Department,
A.D. JONES, in her individual and her
official capacity as an Officer in the
Burlington Police Department,
BLAKE JOHNSON, in his individual and
his official capacity as an Officer in the
Burlington Police Department,
ADRIANA MARIE SPOSATO,
MIKE McNEIL,
WAL-MART STORES, INC., and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

COMPLAINT

DOES 1-10                                 )
                                          )
        Defendants.                       )    .
_____)

NOW COMES, plaintiff ANNA MARIE MARTIN, complaining of defendants, and does allege and aver:

## PARTIES

1.      Plaintiff Anna Marie Martin (hereafter, "Martin") is a citizen and resident of Alamance County, North Carolina.

2.      Upon information and belief, the City of Burlington is a municipal corporation located in Alamance County, North Carolina.

3.      Upon information and belief, Harold T. Owen (hereafter "Owen") was the City Manager of the City of Burlington at the time the events of this Complaint occurred, and is a resident of Alamance County, North Carolina.

4.      Upon information and belief, Hardin Watkins (hereafter "Watkins") is the current City Manager of the City of Burlington, and is a resident of Alamance County, North Carolina.

5.      Upon information and belief, Jeffrey Smythe (hereafter "Smythe") is the Chief of Police of the Burlington Police Department, and is a resident of Alamance County, North Carolina.

6.      Upon information and belief, Defendant Burlington Police Department (hereafter "BPD") is a department of the City of Burlington in Alamance County, North Carolina. BPD operates under the supervision of Owen, Watkins and Smythe, providing policing, enforcement, protective, investigative, and other community services to the citizens of Burlington and nearby areas.

7.      Upon information and belief, Defendant Karla Topete (hereafter "Topete") is an officer and employee of the Burlington Police Department, and was so employed on 3 May 2015.

-2-

8. Upon information and belief, Defendant A.D. Jones (hereafter "Jones") is an officer and employee of the Burlington Police Department, and was so employed on 3 May 2015.

9. Upon information and belief, Defendant Blake Johnson (hereafter "Johnson") is an officer and employee of the Burlington Police Department, and was so employed on 3 May 2015.

10. Upon information and belief, Defendant Adriana Sposato (hereafter "Sposato") is an employee of the 530 South Graham Hopedale Rd. Wal-Mart Stores, Inc. location, serving as a Loss Prevention Officer, and was so employed on 1 May 2015.

11. Upon information and belief, Defendant Mike McNeil (hereafter "McNeil") is an employee of the 530 South Graham Hopedale Rd. Wal-Mart Stores, Inc. location, serving as the Store Manager, and was so employed at the time of the events contained herein.

12. Upon information and belief, Defendant Wal-Mart Stores, Inc. (hereafter "Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Bentonville, Arkansas. Plaintiff is informed and believes that Wal-Mart owns and operates one or more retail stores in Alamance County North Carolina. Upon information and belief, Wal-Mart may operate through one or more other related entities, which are part of a controlled group of which Wal-Mart is a part.

13. Does 1-10 are natural persons and/or fictitious persons whose identities are unknown to Plaintiffs at this time, who may be fictitious persons, officers, employees, managers, coworkers, contract employees, supervisors, Burlington City employees, Burlington City managers, Burlington City supervisors, or other persons who are or were involved in the management, supervision, authorization, indemnification, or operation of defendants.

## CAPACITY

14. Named Defendants City of Burlington, Owen, Watkins, Burlington Police Department, Smythe, Topete, Jones, and Johnson are, upon information and belief, all State actors operating together under the color of law, statute, ordinance, regulation, custom, or usages of the State of North Carolina and/or the City of Burlington, North Carolina, and/or the Burlington Police Department.

15.    To the extent applicable with regard to the various claims set out hereinafter, Defendants Owen, Watkins, Smythe, Topete, Jones and Johnson are named in their respective official capacities and individually.

## ABSENCE/WAIVER OF IMMUNITY

16.    With respect to qualified individual immunity, the Supreme Court of the United States has determined:

> [...]that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...

*Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.E.2d 396, 102 S.Ct. 2727 (1982).

17.    With respect to qualified municipal immunity, the Supreme Court of the United States has determined:

> Absent any clearer indication that Congress intended so to limit the reach of a statute [42 U.S.C. § 1983] expressly designed to provide a "broad remedy for violations of federally protected civil rights," *Monnell v. New York City Dept. of Social Services*, 436 U.S., at 685, 98 S.Ct., at 2033, we are unwilling to suppose that injuries occasioned by a municipality's unconstitutional conduct were not also meant to be fully redressable through its sweep.

*Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

18.    The North Carolina Supreme Court has determined that government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992).

19.    Defendants knew or should have known of the clearly established constitutional rights contained within the Constitution of the United States and its Amendments, which are alleged in this cause to be violated.

20.    Defendants are neither shielded nor immune from liability under any principle known to Plaintiffs. Defendants are not immune from injunctive relief.

21.    Upon information and belief, none of the Defendants occupies a position ordinarily qualifying for the defense of absolute immunity.

22.    Upon information and belief, Defendants have waived immunities by purchasing one or more policies of insurance, or by participating in one or more risk-sharing pools or agreements.

23.    Defendants are not entitled official immunity because they acted with corrupt purpose, in that defendant Wal-Mart Stores, Inc. holds and exercises inappropriate influence over the Burlington Police Department and its employees, including defendants. As is demonstrated in the circumstances of the criminal arrest and charge of plaintiff, and as plaintiff expects to show in this cause, Wal-Mart Stores, Inc. exercises inappropriate influence upon the law enforcement personnel of defendant Burlington and Alamance County, including the ability to initiate and conclude criminal prosecutions at its sayso. Wal-Mart Stores, Inc., through its agents and representatives, is able to, and does, indicate and name persons, including plaintiff, it wishes for the law enforcement defendants to arrest, without sufficient diligence, care or regard to the guilt or innocence of the targets, which law enforcement proceeds to arrest without adequate investigation. Wal-Mart Stores, Inc. also possesses and exercises the power to conclude criminal prosecutions at its discretion, effectively pre-empting the independence of law enforcement authorities, including officers and employees of the Burlington Police Department, and others. Wal-Mart Stores, Inc. exercised these powers and prerogatives against plaintiff, and did so with a motive to generate financial profits thereby, effectively co-opting and corrupting the law enforcement authorities.

## FACTUAL BACKGROUND

24.    At all times relevant to the subject matter of this civil action, Sposato and McNeil were employed by Wal-Mart.

25.     On or about 25 April 2015, Martin was stopped by Johnson regarding an issue with the license plate on her vehicle.

26.     Martin explained that she recently purchased her vehicle, a Ford sedan, to replace her Scion sedan that was destroyed. She further advised Johnson that the vendor transferred the license plate from the old vehicle to the new vehicle. Johnson apparently investigated Martin's license and registration and released her.

27.     On 1 May 2015, Martin completed work at 8:00 a.m. She then proceeded to an errand at Time Warner. She then went to her granddaughter's school for lunch. Martin signed in as a visitor at the school around lunchtime.

28.     After departing the school, Martin went to her son's home to let him use the Ford vehicle. Martin stayed at her son's home until he returned with her vehicle, and then went to dinner at Your House Restaurant in Greensboro around 6:00 p.m.

29.     At no point on 1 May 2015 did Martin go to any Wal-Mart Stores location.

30.     Martin has never concealed from, shoplifted from, or left any Wal-Mart location with merchandise for which she had not paid.

31.     On or about 1 May 2015, an employee or other person associated with Wal-Mart initiated an Incident/Investigation Report with the Burlington Police Department regarding alleged Misdemeanor Larceny and Hit and Run based on information provided by Sposato.

32.     The allegedly stolen items described in the Incident/Investigation Report had a total retail price of less than twenty-five dollars.

33.     Sposato reported that the alleged perpetrator departed in a black 1996 Chevrolet pickup truck bearing a license plate number XWY-3938. Upon information and belief, this license plate is registered in the name of Barry Dwayne Clayton of Leasburg, North Carolina.

34.     Sposato reported that the black pickup truck struck a Chrysler Town and County upon exiting the Wal-Mart parking lot.

35.     Topete responded to Wal-Mart, reviewed the surveillance video, and printed several pictures provided by Wal-Mart.

-6-

36.   Topete sent the pictures in an email to other employees the Burlington Police Department requesting help to identify the suspect.

37.   On or about 2 May 2015, Johnson advised Topete that he recognized the suspect as Anna Marie Martin, whom he pulled over the week prior.

38.   Upon information and belief, the defendant officers investigated the driver license that Johnson captured the week prior, which returned as Anna Marie Martin of 1317 Beaumont Ct., Burlington North Carolina.

39.   On or about 3 May 2015, Comer showed a photograph of Martin to Wal-Mart Loss Prevention employee Sposato. Sposato identified Martin, stating that she was "80% sure" that Martin was the female that she encountered on 1 May 2015.

40.   Topete and Jones went to the apartment of Martin's son.

41.   Martin was not present at the apartment at that time, but Topete and Jones spoke with Martin's neighbors and family members.

42.   Martin's neighbor advised Topete and Jones that Martin does not drive a black pickup truck. Topete and/or Jones told the neighbor that they knew that Martin drives a black pickup truck. The neighbor again disagreed with this observation. Defendants paid no heed to the neighbor, nor did they investigate this information further.

43.   Martin does not currently, nor has she ever, owned or driven a black pickup truck. Martin currently drives a white Ford sedan which replaced her burgundy Scion.

44.   Martin does not know anyone by the name of Barry Dwayne Clayton.

45.   Martin does not know anyone who lives in Leasburg North Carolina.

46.   Topete and Jones departed the apartment complex before Martin returned from church and lunch on 3 May 2016. Upon learning that the officers were looking for her, Martin called the police station and asked if she could come in to the BPD facilities.

47.   The dispatcher advised Martin to stay at the apartment, because Topete and Jones would be returning to meet her. Martin gave defendants her phone number and said that she was at the apartment.

48.     When the officers arrived, Martin opened the front door. The officers asked if they could come in. While remaining inside, Martin advised Topete and Jones that they did not have permission to come in; rather, she would come out to meet the officers.

49.     Before she could step outside, and despite protests, Jones and Topete pushed their way into the apartment, threw Martin on the couch and arrested her.

50.     At no point did Martin step outside of the apartment unit.

51.     Upon information and belief, neither officer obtained a search warrant before entering the apartment of Martin's son to arrest Martin.

52.     Officer Topete and/or Officer Jones searched other parts of the apartment while Martin was being placed in handcuffs.

53.     Martin pleaded with the officers, and asked what she had done to be arrested.

54.     Topete and Jones replied that "you know what you have done."

55.     Topete and Jones did not serve Martin with an arrest warrant at the time of arrest.

56.     Topete and Jones did not produce a search warrant prior to pushing their way into the apartment after Martin said that they could not enter.

57.     Martin asserted unequivocally that she had not done anything to be arrested. Topete and Jones expressed no uncertainty or doubt as to whether Martin had committed a crime.

58.     Martin requested a lie-detector test, but the arresting officers denied this request.

59.     Topete and Jones took Martin into custody, transported her to Burlington Police Department headquarters, and then transported her to Graham, where she was presented to a magistrate, served, and processed. Martin was subsequently released on bond.

60.     On 14 May 2015, Ladd Ackermann, Esq., with the Law Offices of Palmer, Reifler and Associates, P.A. wrote a letter to Martin on behalf of Wal-Mart Stores, Inc. This letter describes itself as a "settlement offer".

61.     In the 14 May letter, Ackermann (1) states that Palmer, Reifler represents Wal-Mart; (2) states that Martin unlawfully took possession of the property of Wal-Mart

- 8 -

Stores, Inc.; and (3) demands that Martin pay damages in the amount of $150.00 within 20 days of receipt of the letter, or risk being held civilly liable for an amount up to $1,000.00 in a civil action. Ackermann further says that Wal-Mart Stores, Inc. will abandon further civil remedy against Martin if she pays the sum demanded. A true and accurate copy of the 14 May letter is attached hereto as Exhibit 1. This letter was sent with malice and in bad faith.

62.     Martin did not respond to the 14 May letter.

63.     On 8 June 2015, Ackermann sent a second letter to Martin on behalf of Wal-Mart Stores, Inc.

64.     Ackermann's 8 June letter (1) states that Palmer, Reifler represents Wal-Mart Stores; (2) states that Martin unlawfully took possession of the property of Wal-Mart Stores, Inc.; and (3) demands that Martin pay damages in the amount of $425.00 within 10 days of the receipt of the letter, or risk being held civilly liable for an amount up to $1,000.00 in civil action. Ackermann additionally says that Wal-Mart Stores, Inc. will abandon further civil remedy against Martin if she pays the sum demanded. A true and accurate copy of the 8 June letter is attached hereto as Exhibit 2. This letter was sent with malice and in bad faith.

65.     Martin did not respond to the 8 June letter.

66.     In preparation for her defense of the criminal charges, Martin served a subpoena upon the S. Graham-Hopedale Rd. Wal-Mart on 18 June 2015. A true and accurate copy of the subpoena is attached hereto as Exhibit 3.

67.     On 19 June 2015, the criminal charges against Martin were dismissed by Assistant District Attorney Brooks Stone. A true and accurate copy of the words inscribed explaining the dismissal of the charges is attached hereto as Exhibit 4.

68.     Mr. Stone advised that the person representing Wal-Mart claimed a mistaken identity.

69.     Defedants Wal-Mart and Sposato made the foregoing false statements accusing Martin of crimes of moral turpitude to third parties, specifically Alamance County Police Department and its employees, including Topete and perhaps others, who acted upon the defamatory information.

- 9 -

70. Wal-Mart Stores, Inc. impugned Martin in her trade, business or occupation in its defamation of plaintiff.

71. Wal-Mart's statements falsely accuse Martin of criminal activity.

72. Wal-Mart and Sposato acted with indifference and in disregard of the truth or falsity of the statements accusing plaintiff of two crimes.

73. As a proximate result of the defamation by Defendants, as well as the false arrest by Defendants, Plaintiff has suffered general damages and special damages, including loss of reputation, risk to employment, loss of earning potential, emotional distress, pain and suffering, financial loss, in an amount exceeding twenty-five thousand dollars according to proof at trial.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 CLAIM

74. The previous allegations are incorporated herein as if fully set forth.

75. Topete and Jones unlawfully detained, arrested, and charged Martin with misdemeanor larceny and hit and run, which occurred outside their presence.

76. Topete and Jones, while acting under color of law and in their individual and/or official capacities, forcibly entered Martin's home without a search warrant and in opposition to Martin's denial of their entry, violating Martin's Fourth Amendment right to be "secure in her person against unreasonable searches and seizures[,]" (U.S. Const. amend. IV) as applied to the States and incorporated through the Due Process Clause of the Fourteenth Amendment to the Constitution. *See* U.S. Const. amend. XIV, § 1.

77. Supervisory personnel including Smythe and/or his predecessor, together with other officers in the chain of command knew or should have known that there was a danger that their subordinates would engage in unconstitutional conduct and the supervisor had the authority to take steps to prevent this conduct, and yet failed to act by properly training, supervising, disciplining, hiring, or adopting policies that are necessary to prevent constitutional violations by their subordinates.

78. Officials of the City of Burlington and the Burlington Police Department, Defendants Owen, Watkins, Smythe, and/or their predecessors, together with other officers in the chain of command allowed widespread practice(s) that, although not

authorized by written law or express municipal policy, are so permanent and well settled as to constitute custom(s) or usage(s).

79.     Such widespread practice(s) include, but are not limited to, indifferent training, indifferent supervision or discipline, indifferent hiring, and indifferent failure to adopt policies necessary to prevent constitutional violations.

80.     Through this deliberate indifference, and while allowing widespread practices that would allow constitutional violations to occur, the Defendants set in motion a series of acts by their subordinates that they knew or reasonably should have known would cause their subordinates to deprive Martin of her constitutional rights, and Defendants failed to act to prevent these constitutional violations.

81.     For example, the Court of Appeals of North Carolina denounced an instance where Burlington Police Department employees arrested an innocent person and charged her with a misdemeanor which did not occur in their presence. See *State v. York*, __ N.C. App. __, __ S.E.2d __ (COA 13-1147 1 April 2014). A true and accurate copy of the slip opinion is attached hereto as Exhibit 5. Plaintiff is informed and believes that the City of Burlington defendants neglected and failed to conduct any training sessions for the employees of the Burlington Police Department in how they should handle arrests, which take into consideration the standards established by the courts of North Carolina, including the North Carolina Court of Appeals. Moreover, plaintiff is informed that none of the officers or supervisory personnel involved in the York arrest was counseled or disciplined for the illegal arrest in that case. In this way and in others, defendant City of Burlington, the City Managers, the Chiefs of Police and supervisory personnel established a culture of lawlessness and established a force of police officers who are not properly trained, supervised or disciplined concerning procedures for arrest, and perhaps in other important ways. Plaintiff is informed and believes that this situation persists within the Burlington Police Department, and this culture of lawlessness is condoned by the City of Burlington and its City Mangers.

82.     Topete and Jones were not properly supervised, disciplined, trained, or hired, and/or did not adopt nor were not trained in policies which would prevent constitutional violations.

83.     Topete and Jones unreasonably seized Martin inside of her home causing a violation of her constitutionally mandated right to "be secure in [her] person against unreasonable searches and seizures[.]" U.S. Const. amend XIV.

- 11 -

84. The remedies provided by the State of North Carolina are inadequate to provide redress for the Plaintiff's injuries.

85. As a direct and proximate result of the constitutional violations committed against her, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

86. That under 42 U.S.C. § 1988(b), in any action or proceeding to enforce a provision of 42 U.S.C. § 1983, the Court may, in its discretion, allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and Plaintiff seeks attorney's fees under the statute.

## SECOND CLAIM FOR RELIEF
## MALICIOUS PROSECTUION – LARCENY

87. The previous allegations are incorporated herein as if fully set forth.

88. Defendants, acting individually and/or in concert with each other, either instituted or caused a criminal proceeding to be continued against Plaintiff, without probable cause.

89. Defendants instituted the proceedings against Plaintiff with malice, acting out of a motive of ill will, spite, grudge, revenge, or oppression, which resulted in a substantial interference with her person.

90. The criminal proceeding instituted against Martin ended in the Plaintiff's favor, wherein the charges were dismissed for mistaken identity.

91. As a direct and proximate result of the malicious prosecution committed upon her, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION – HIT AND RUN

92. The previous allegations are incorporated herein as if fully set forth.

93. Defendants, acting individually and/or in concert with each other, either instituted or caused a criminal proceeding for hit and run to be continued against Plaintiff, without probable cause.

94.     Defendants instituted the proceedings against Martin with malice, acting out of a motive of ill will, spite, grudge, revenge, or oppression, which resulted in a substantial interference with her person.

95.     The criminal proceeding instituted against Plaintiff ended in the Plaintiff's favor, wherein the charges were dismissed for mistaken identity.

96.     As a direct and proximate result of the malicious prosecution committed upon her, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

### FOURTH CLAIM FOR RELIEF
### FALSE ARREST

97.     The foregoing allegations are incorporated herein as if fully set forth.

98.     Defendants caused Plaintiff to be arrested when Defendants knew or should have known that Plaintiff had not committed any crime.

99.     As a result of the foregoing, Plaintiff has suffered damages exceeding Twenty-Five Thousand dollars according to proof at trial.

### FIFTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT

100.    The previous allegations are incorporated herein as if fully set forth.

101.    Topete and Jones forced Martin, who was handcuffed at the time, into the rear seat of a Burlington Police Department vehicle, closing the door on her, locking her in, and taking her into custody.

102.    Topete and Jones, acting with malice, unlawfully restrained and seized Martin against her will, depriving her of her liberty, in their Police vehicle, without her consent, for approximately twenty minutes time.

103.    Martin's imprisonment and detention continued when Topete unlawfully transported Martin to the Burlington Police Department, and from there on to the Alamance County Jail, located in Graham, North Carolina.

- 13 -

104.  Without legal authority, justification, or probable cause, Topete, aided by other Defendants, caused, by their unlawful intentional and willful actions, the false imprisonment, processing, search, and incarceration of Martin.

105.  As a direct and proximate result of the false imprisonment committed upon Ms. Martin, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL AND/OR RECKLESS INFLICTION OF
## EMOTIONAL DISTRESS

106.  The previous allegations are incorporated herein as if fully set forth.

107.  Topete, Jones, and other Defendants, all acting together with malice and in concert, caused the unlawful assault, battery, false imprisonment, arrest, processing, search, incarceration, and prosecution of Plaintiff.

108.  Defendants' conduct was extreme and outrageous, and exceeded the bounds usually tolerated by a decent society.

109.  Defendants' conduct was intended to cause, or was recklessly indifferent to the likelihood it would cause, severe emotional distress to the Plaintiff.

110.  Defendants' conduct in fact caused severe emotional distress to the Plaintiff, wherein Plaintiff suffered, and continues to suffer from, severe mental and emotional effects that culminated in recurrent and severe major depressive disorders, and other physical and mental conditions.

111.  As a direct and proximate result of the intentional and/or reckless infliction of emotional distress committed against Martin, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

## SEVENTH CLAIM FOR RELIEF
## ASSAULT AND BATTERY

112.  The previous allegations are incorporated herein as if fully set forth.

113.  Martin was lawfully present at her son's apartment, and while there, contacted the Burlington Police Department offering to come to the Burlington Police Station

- 14 -

voluntarily to answer any questions or concerns that the Burlington Police Department had.

114. Martin was told not to come to the Burlington Police Station, and that officers would instead be sent to her location.

115. Upon arrival, Topete and Jones asked if they could enter Martin's residence. When Martin answered in the negative, Topete and Jones nonetheless entered the home, unlawfully grabbed, detained, handcuffed, arrested Martin and searched the abode.

116. Martin was fearful and formed reasonable apprehension that harmful or offensive contact with her person was imminent. Topete and Jones, by causing Martin to fear for her personal safety and to fear unlawful arrest, committed assault upon Martin.

117. Topete and Jones, acting with malice, grabbed Martin and forced her onto the couch (and ground?), and, while violently forcing her hands behind her, handcuffed Martin.

118. The contact between Topete and Jones and Plaintiff Martin was unlawful, offensive, harmful, and injurious. This contact was without consent on the part of Martin.

119. Topete and Jones committed battery upon Martin.

120. As a direct and proximate result of the assault and battery committed upon Martin, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

EIGHTH CLAIM FOR RELIEF

DEFAMATION BY WAL-MART STORES, INC.

AND ADRIANA SPOSATO

121. The previous allegations are incorporated herein as if fully set forth.

122. Sposato was acting individually and on behalf of Wal-Mart, and was acting as agent for Wal-Mart within the scope of her duties.

123. Wal-Mart defamed Plaintiff by permitting Sposato to publish untrue statements concerning Plaintiff to the Burlington Police Department as detailed hereinabove.

124. The defamatory statements were untrue when made, or were in reckless disregard of their truth or falsity.

125. Defendant's false statements accused plaintiff of committing criminal acts, and impugned plaintiff in her trade or business.

126. Defendants Wal-Mart and Sposato knew or should have known that Plaintiff would suffer severe damages, including, among other things, loss of her livelihood, loss of employment, loss of status in the community, loss of earning potential and other damage to her reputation and good name.

127. As a direct and proximate result of defamation by Wal-Mart and Sposato, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

## NINTH CLAIM FOR RELIEF
## RESPONDEAT SUPERIOR
## WAL-MART STORES, INC.

128. The foregoing allegations are incorporated herein as if fully set forth.

129. At all times relevant to the claims made herein, Sposato was employed by Wal-Mart or one of its family of businesses as loss prevention officer at the Hopedale Road Wal-Mart location.

130. At all times relevant to the claims made herein, Sposato was acting with apparent authority from her employer, Wal-Mart or one of its family of businesses.

131. Wal-Mart failed to supervise Sposato properly.

132. Upon information and belief, Wal-Mart did not discipline or reprimand Sposato for any of her misrepresentations.

133. As a direct and proximate result thereof, Wal-Mart and its family of businesses is fully responsible for all of Sposato's misrepresentations and defamatory statements under the principle of Respondeat Superior.

## TENTH CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## WAL-MART STORES, INC.

134.    The previous allegations are incorporated herein as if fully set forth.

135.    Wal-Mart's use of the Palmer, Reifler Law Firm constitutes an unfair and deceptive practice. This relationship is intended to deceive those accused of larceny from Wal-Mart, some of whom are innocent, and to coerce those individuals to pay exorbitant amounts of money to be divided between Palmer, Reifler and Wal-Mart. The money demanded in the Palmer, Reifler – Wal-Mart letters substantially overstates losses which should be recoverable in a civil action, and the amounts demanded appear to be arbitrary and calculated to exact the maximum amount of money in the same way that extortionists calculate their extortion demands. Plaintiff is informed and believes that neither the Palmer Reifler firm, nor Wal-Mart Stores, Inc. customarily, if ever, files civil actions within the State of North Carolina of the nature described in the Palmer-Reifler – Wal-Mart letters. The letters, however, are written in a way that is calculated to lead to the misleading impression that a civil action is actually contemplated against the addressee of the letters. Upon information and belief, Wal-Mart Stores, Inc. knows, and at all times relevant hereto knew, and intended, that if an addressee concludes from one or more of the Palmer-Reifler – Wal-Mart Stores, Inc. letters that a civil action is imminent, this impression is false, as Wal-Mart Stores, Inc. has no actual intent to initiate civil proceedings.

136.    Upon information and belief, Wal-Mart engages the services of Palmer, Reifler to send mass mailings nationwide to individuals that give the false impression that lawyers have evaluated the claims against these individuals on behalf of Wal-Mart that Wal-Mart intends to file a civil lawsuit against the individual if the individual fails to pay, and that Palmer, Reifler is collecting a valid debt instead of making a demand on an unadjudicated tort claim.

137.    Through this process, Wal-Mart unfairly exploits and profits from persons whom it accuses, rightly or wrongly, including Plaintiff, of crimes such as larceny. Upon information and belief, the Palmer, Reifler extortionate letter-writing campaign yields substantial unearned profits to Wal-Mart.

138.    The foregoing occurred in commerce.

- 17 -

139. The foregoing constitutes unfair and deceptive practices within the meaning of N.C. Gen. Stat. § 75-1.1 *et seq.*

140. As a result of the unfair and deceptive practices of defendants, plaintiff suffered damages, and expects to suffer damages in the future in an amount exceeding Twenty-Five Thousand dollars according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF
### ABUSE OF PROCESS
### WAL-MART STORES, INC.

141. The previous allegations are incorporated herein as if fully set forth.

142. Wal-Mart maliciously and deliberately misused the civil court process to further its financial goals through its engagement of Ackermann and Palmer, Reifler Law Firm to send out letters such as those sent to plaintiff.

143. Wal-Mart maliciously and deliberately misused the criminal court process to further its financial goals through the use of the Burlington Police Department, in concert with its extortionate letter-writing campaign, as described above.

144. Wal-Mart caused the Burlington Police Department to initiate criminal charges against Plaintiff with the ulterior purpose of profiting from the false accusation of larceny.

145. The criminal charges against Plaintiff were dismissed one day after Wal-Mart was served with a subpoena in reference to the alleged theft. This indicates an improper relationship between Wal-Mart and the Burlington Police Department, in that Wal-Mart has the influence to turn on and off criminal proceedings against alleged shoplifters such as Plaintiff; a power that far exceeds any capability that a business should have with regard to the legal process.

146. As a direct and proximate result of Wal-Mart's abuse of the legal process, Plaintiff has suffered damages in excess of Twenty-Five Thousand Dollars according to proof at trial.

## TWELFTH CLAIM FOR RELIEF
### PUNITIVE DAMAGES

147. The previous allegations are incorporated herein as if fully set forth.

148. The conduct of Defendants was intentional, willful, and in reckless disregard of the consequences to Plaintiffs, accompanied and informed by malice, spite, ill will, and oppression, including profit motive.

149. The arrest, detention, prosecution, and other misconduct of Defendants alleged herein was intentional, or was done with reckless disregard of the consequences to Plaintiff.

150. Defendants persisted in their misconduct despite knowledge, or with reckless disregard, of their errors, and should not have persisted.

151. Plaintiff prays that the finder of fact award punitive damages in an amount to be determined in accordance with law by the trier of fact.

## THIRTEENTH CLAIM FOR RELIEF
### DEFAMATION BY DEFENDANT BLAKE JOHNSON

152. The previous allegations are incorporated herein as if fully set forth.

153. Johnson defamed Plaintiff by making untrue statements concerning Plaintiff to other members of the Burlington Police Department.

154. Johnson's defamatory comments were untrue when made, and were made in reckless disregard of their truth or falsity.

155. Johnson's false statements falsely identified Plaintiff as a suspect who had committed criminal acts.

156. Johnson knew or should have known that his false statements would cause Plaintiff to suffer severe damages, including, among other things, damage to or loss of her livelihood, loss of employment, loss of status in the community, loss of earning potential and other damage to her reputation and good name.

157. As a proximate result of defamation by Johnson, Plaintiff has suffered damages exceeding Twenty-Five Thousand Dollars, according to proof at trial.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. That the court enter money judgment in favor of Plaintiff and against Defendants in an amount exceeding twenty-five thousand dollars according to proof at trial; and

2.     That the Court enter an Injunction requiring defendant City of Burlington, its City Manager and Chief of Police to institute training and education programs for police officers, their supervisors and Chiefs, and other law enforcement personnel to reduce the frequency of constitutional violations; and

3.     That the Court enter an Injunction requiring defendant City of Burlington, its City Manager and Chief of Police to institute meaningful personnel evaluation and discipline programs that take into account and punish constitutional violations by police officers, their supervisors and Chiefs, and other law enforcement personnel to require meaningful negative consequences for constitutional violations throughout the chain of command; and

4.     That the court award punitive damages against Defendants in an amount to be determined by the trier of fact according to law; and

5.     That the court tax the costs of this action against Defendants in accordance with law; and

6.     That the court award Plaintiffs' reasonable attorney fees as provided by law; and

7.     That the money judgment bear interest as provided by law; and

8.     That all matters so triable be determined by a jury; and

9.     For such other and further relief as may be just and proper.

This, the 20th day of April, 2016.

David W. McDonald
N.C. State Bar No. 12814
Attorney for Plaintiff
dmcdonald@hmnlawfirm.com

_(W)ith E. Mitchell_

William E. Mitchell
N.C. State Bar No. 47953
Attorney for Plaintiff
wmitchell@hmnlawfirm.com

OF COUNSEL:
HICKS McDONALD NOECKER LLP
100 South Elm Street, Suite 510
Greensboro, North Carolina 27401
336-574-0200 (voice)
336-574-0201 (fax)

_Jack A. Kaplan_

Jack A. Kaplan
N.C. State Bar No. 46765
Attorney for Plaintiff
jkaplan@morganherring.com
Post Office Box 2756
High Point, North Carolina 27261
336-883-6167 (voice)
336-883-6647 (fax)

- 21 -

## VERIFICATION

ANNA MARIE MARTIN, being first duly sworn, does hereby aver that she is over age eighteen and competent to make this Verification; that she has read the foregoing Complaint and knows the contents thereof; that the matters alleged herein are true of her own personal knowledge, except for those matters alleged upon information and belief; and as to those matters alleged upon information and belief, she is informed and believes them to be true.

_Anna Marie Martin_
ANNA MARIE MARTIN

NORTH CAROLINA
GUILFORD COUNTY

Sworn and subscribed before me, this 20th day of April 2016.

_Will E. Mitchell_
NOTARY PUBLIC: _William E. Mitchell_
My Commission Expires: _February 11, 2022_



- 22 -